The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning ladies and gentlemen. We have two cases for argument this morning. Three others are on the calendar that are being decided on the briefs. First case is Trustees of Columbia Univ. of Columbia believes that Judge Worth's dissent, which noted that Metzger in 1994 discouraged the development of a labeled allele-capped nucleotide, eroded any motivation that may have been created by Chen to pursue that nucleotide. The majority, despite acknowledging uncertainty, concerns, obstacles regarding Metzger 1994's allele, still found that Chen's prophetic disclosures and the possibility of modifying Metzger's reaction conditions would have motivated a person of skill in the art to develop the labeled allele-capped nucleotides with a reasonable expectation that it would work for SBS. Mr. Murnay, Mr. Murnay, when I look at these patents, I see 28 columns of prior art cited, hundreds of references, and the only ethical reason for citing all those references is to help the examiner determine whether the claim is true. This obviously is a crowded art, and these claims seem to be essentially known compounds with a generic protective group, which includes allele, and isn't that essentially what these claims are? Known compounds with a known type of protective group. Thank you, your honor. I would respectfully submit that what these claims cover is the breakthrough invention by Columbia. The Columbia inventors were the first to recognize the problem that had plagued efforts to achieve SBS for more than 10 years. The claims compounds, when you look at claims to compounds, you look at how they differ from the prior art, and isn't essentially the only way they differ here is with the protective group, particularly allele, which was known. The discovery of the inventors as reflected by the specifications of the patents, the prior art in columns one and two, your honor, mentioned all of that is and then the invention which is described at the bottom of column two to the top of column three in each patent, is the Columbia inventors recognition, only recognition by anyone, that the active site of the polymerase was very crowded, and up till that time that had not been appreciated. Columbia appreciated that the capping group had to be small. It could not be a ketone, it could not be methoxy, it could not be an ester. That's what the claims describes and recites. Previously, beginning with Chen in the early 90s, the preferred compound was a 2-nitrobenzyl, which is not small. Metzger in 1994, cognizant of Chen, also focused on the 2-nitrobenzyl, said it was ideal. Thereafter, in the later 1990s, others focused on the 2-nitrobenzyl. Even if allele is not the best, it was known in the US. Allele was known, it was mentioned in the deblocking groups, not the preferred capping groups of Chen. It was mentioned in the issue with the majority calling it prominently noted. We don't believe it was prominent. It was noted, the words appear, allelether, together with mercury deblocking. However, it was then tested. It was tested, and by the way, Metzger, in Metzger's paper, considered it a novel compound. Metzger, aware of Chen, considered a novel compound. And Metzger, when testing it, found it to be a concede, that the board made a factual finding, that Chen does disclose this. And so, as I understand it, your primary argument is that Metzger then somehow backs away from it and says, no, it may have been disclosed there, but it doesn't work. Is that right? With one caveat, your honor. Metzger doesn't say it may have been disclosed in Chen, because Metzger says it's a novel compound for Metzger. So Metzger doesn't acknowledge it was disclosed in Chen. But the word allelether appears in Chen. But Metzger evaluated it, and Metzger says, throughout Metzger, you have to have terminators. Whether it's for Sanger sequencing, whether it's for SBS, you have to have terminators. But Metzger Table 2 says that it did terminate it, just not completely, right? It says there was a problem. It says, if you look at Table 2, there's an asterisk. And then at the bottom of the table, when it says what the asterisk means, it says it means that the activity was incomplete at the high concentration of 250 micromoles. That means you did not have a... But then Dr. Romsberg's testimony filled in the gap and said that a person of skill in the art would have understood what was shown and would have understood that what they were doing is showing that it can be terminated. Are you just basically debating the factual findings? No, we're not, Your Honor. We believe there is no evidence that the allele is a terminator. Metzger is very clear. It says many times in the paper what terminators are, and it does not say that the allele is a terminator. It does not say that, Your Honor. And what Romsberg acknowledges, Romsberg acknowledges the problem. He says, well, to make it better, to make it better, you could increase the reaction time, which is at odds with the Chen criteria, which is you have to have it rapid. And Romsberg also says you can increase the concentration. Well, the concentration that Metzger was using was already very high, 250 micromoles. Chen, which provided the guidelines, said 30 micromoles is what you were supposed to be using. And Romsberg in testimony has the conditions of Chen. So we don't believe that Romsberg's remedy, and neither did Judge Wirth in dissent, because when Romsberg was pointing to what could be done... Well, Judge Wirth just simply said that he disagreed with the credibility finding, right? Your Honor, he made a very important point. Respectfully, he made a very important point. He said that Romsberg was saying take a look at what was done in Metzger to raise the concentration. And those were Sanger sequencing. The methyl and allyl are different. Methyl is a one-carbon compound. Allyl is a three-carbon compound. And when Metzger was raising the concentration for the Sanger sequencing compound, there are only three terminators there. 1, 8, and 7. 1 and 8 are for Sanger. 7 is the 2-nitrobenzyl for SDS. And he points out that raising that concentration was for the Sanger sequencing compound. No raising of the concentration for the SDS, because SDS requires lower concentration. Sanger sequence, you can have higher concentration to increase the incorporation, because that's a different situation in Sanger the majority said that there was increasing some concentration of compounds, but those were those were untapped compounds. So respectfully, Your Honor, we believe that there is no evidence, and it's in both our opening brief and our reply brief, that there isn't substantial evidence. In other words, the evidence that one looks at, based on the OSI case, that would justify or detract from the agency's decision. We believe that the majority of that, all the evidence, when one looks at all the evidence, it detracts from the majority's decision. Yes, yes, yes, Your Honor, plenty. If I may, what we have here is the Colombian inventors recognizing the need for a cap, which would solve the problem of the prior art. Welsh, in 1999, said that we have to get new polymerases, because we've been trying these two nitrobenzyl, they had a label two nitrobenzyl, and by the way, in column two of the patents, the Colombian vendors know about, note Welsh, and just right before the filing, the Semple published application a month before the filing, said the inefficiency in SBS had been a plague. Everyone had been trying to achieve SBS, Chen pointed to two nitrobenzyl, Metzger directed to two nitrobenzyl, everyone else was following two nitrobenzyl, it was the wrong way to go. Remember, this is, the it's the massive parallel method for decoding DNA and RNA. SBS is performed simultaneously on a large number of identical DNA templates in order to These are claims to compounds, these are claims to compounds, and they have to be compared with other compounds, and you're emphasizing the importance of allyl, which is itself in the prior act. We're not talking about mechanisms here, we're talking about compounds. And these compounds, these compounds are, as we take a look at the compounds, the claim language in the compounds, the cap is stable during a DNA polymerase reaction, so this compound is to take place, is to be used in a DNA polymerase reaction, and it is, the analog is incorporated at the end of a growing, growing strand of DNA during a DNA polymerase reaction, Your Honor. So the compound, in order to satisfy those elements of the claim, has to be small, it cannot be a ketone, it cannot be a methoxy, it cannot be an Columbia. Prior to that, people were looking, and in fact, Chen and Metzger and others were using not small caps, they were using methoxy, they were using ketones. I'll speak again in my rebuttal, Your Honors. We will save that for you, Mr. Rennes. Mr. Rennes. Thank you, Your Honor. Your Honor, put your finger on it, the use of a allyl ether as a blocking group, also known as a protecting group or a terminating group, was established in the prior art, and the question that was asked of Columbia, whether this was a fact dispute or not, the answer was there was no evidence that allyl is a terminator, and that was emphasized as the central point and the central argument on this appeal. Counsel, this is Judge Rennes. Was termination actually established in the prior art, or was that a factor that was left incomplete? Well, so you start with the Chen reference, is that A3430, and it states specifically allyl ethers are described as a protecting group, and I don't think there's any real doubt about that. That was the main dispute down in front of the board, and that was not appealed. So what are we supposed to do with the fact that you made the opposite argument with respect to what Chen shows during the re-exam? A predecessor in a different proceeding made the argument that Chen was prophetic, and I have two response on that. One is there's no appeal of the estoppel, so it's just, you know, an evaluation of the evidence here and whether the evidence supports the board, and, you know, it's a known compound that allyl ethers are a terminator, as set forth on, you know, on page 24 of Chen, and beyond that, the Metzger reference reinforces the point. You know, going back to Judge Rayner, and I think addressing your question, Judge O'Malley, the Metzger reference reinforces the point by stating that there is termination. Now, one subtlety here is that the parties are in agreement that termination is the same thing as incorporation. If you get the blocking group incorporated, then you're terminating. There's no debate about that. That's on page 16 and 17 of their opening brief. That's their point, that if you have incomplete incorporation, you have incomplete termination, and that's their argument. Yet, and this, I think, really just nails it, yet with respect to Metzger himself, when he describes what references, excuse me, what blocking groups incorporate, he's specific, and this is on A3506. He says, the protecting groups containing ether linkages at the three prime position compounds 1, 3, 4, 7, 8 were incorporated by some of the polymerases. This is in the text of, forget the table, but this is in the text. So, there's no caveat that that was partially incorporated or not, you know, that only some of them incorporated, and it wasn't actually complete. Now, also in the... Mr. Reines, what are we to make of B, C, and D, particularly B and C, functional limitations in the claim? Don't those distinguish the structural, the otherwise structural definitions and perhaps lead to a conclusion that these are unexpected properties and the claims are non-obvious? I just, I think that the board's finding that each of the claim requirements are met is, you know, is fully supported, and in terms of the function of it being a terminator, that is clearly satisfied. I just, I think both in Metzger and in Chen. And, but, you know, just to make that point about the functional aspect of it, you know, not only does Metzger in the text, this is on, again, 3506, state without caveat that it's incorporated by the polymerase. Also, in the Jew patent itself, right, in the Jew patent itself, counsel's saying the invention's described in column two and three. That's the background of the invention, okay? That's not the summary of the invention, which relates to binding to a hard, to a solid support. But at column three, at lines 28 through 30, it states the allyl was also shown to be incorporated in the growing strand in Metzger. So, there was no statement that it was partially incorporated or that incorporation wasn't complete for all the different molecules. It, both Metzger and the patent itself state without caveat that their incorporation is achieved. The only issue is the asterisk in the table, which says, oh, by the way, it wasn't complete. And with that, I think it's very important to realize, and this is the debate that the dissent had, which is completely a factual debate, and I think Judge O'Malley was right on it with stating that all judge work was registered with disagreement that he was not persuaded by one expert over another. He wasn't implying anything that there was a legal issue there. But with respect to completing the incorporation, increasing the concentration of the terminated nucleotides, the allyl, putting more of the allyl groups in would obviously improve termination. And that is supported by Chen. But what's your response to your friend on the other side who argues that actually that increased concentration takes you so far away from the teachings of Chen that you're otherwise not really practicing what Chen taught? Well, I'm delighted you raised that because both the board recognized and Chen states that, this is at A3426, Chen specifically states in very understandable language, and they got a lot of this debate about very technical stuff, and the panel was obviously very technically astute with their, you can read that in the opinion. But at A34206, this is page 20 of Chen, at line 20, it states, in addition to force the reaction, that is to get it to complete for every single molecule, not just most, especially with derivatized dNTPs, that's what we're talking about, derivatized nucleotides. They're derivatized because they've got the And they often be helpful to use substantial excess over stoichiometry of the dNTPs. So Chen is saying, okay, if you want to drive the reaction to completion, put more of a concentration of the alleles in the mixture. And it's, first of all, that's just intuitive. I don't know why that would be surprising that if you put more in. And just how fact-bound this is, I thought Professor Romsberg did a great job of explaining that in Metzger's single experiment. He included natural nucleotides in there. And so there was competition. And obviously, the natural nucleotides are going to incorporate better. And that one of the skill in the art reviewing Metzger would understand that the presence of the natural nucleotides created more competition for the derivatized ones. But in any event, increasing the concentration, he describes how you would know about that, that Metzger itself taught it. Chen taught it, as I just pointed the panel to, again, A3426. So Judge O'Malley, I understand the concern. But when Chen himself is saying, if you really want to drive the incorporation to completion for your termination, put substantial excess of the derivatized compounds in, that's just basic chemistry. And so you would have to work through all of Romsberg on that, paragraph 65-67 and 75-76. And look at Metzger. And then there's the citation by the board to the different figures and teachings in Metzger about increasing concentration. I think the debate about, well, it might get to be too much that people at some point would think, well, we've saturated with too many of the derivatized nucleotides. First of all, I don't think that's supported in the record. But even if it was, that's exactly the type of in-depth, factual dispute over detailed technical matter, where there are three judges with technical expertise in this area and day-to-day expertise, looked at it closely, and that's the conclusion they came to. I do not think that's a legal question, and I certainly don't think. Counsel's statement that there's no evidence that alkyl is the terminator, after being described as a blocking group in Chen, after Metzger proved that it would work, although he said, ultimately, there wasn't completion. And really, the insult, the injury of it is the Jew patent doesn't ever acknowledge that Metzger said there was a problem with allyl in the background of the invention. Oh, go ahead. But with Metzger, though, I mean, having pointed to other options as apparently better options, why isn't this a case like OSI? This isn't like OSI. OSI was a problem where there'd been thousands and thousands of compounds that had been tested and tested and tested, and there's just no resemblance. And not only that, starting where we began with Judge Lurie's astute comment that this is a known compound, Chen teaches using the allyl as a terminator. So it's known out there. It's not like it was to put two references together to combine it. In OSI, it was taking this disparate teaching and that disparate teaching and say, okay, you put these two things together and create the compound. And the argument was, well, people would have done that when they were scanning through thousands and thousands of failures. Mr. Reines, when I look at these patents, they're a fairly recent vintage in terms of issuance that they go back to the year 2000. Did they have a difficult prosecution? It looked like 10 or 12 continuations. Do you know any of the history? Yeah, I have some experience with the history. This has been going on for almost 10 years. They've been, after Illumina's groundbreaking DNA sequencing system came out in 2006, 2007, which doesn't use allyl. It actually uses a different capping group, but they're trying to encompass it with this concept of small. After that came out, they've been trying to craft claims that they can get through. And they had a set of claims that got invalidated and this court, a different panel, but this court upheld those invalidations. And so it's been a cat and mouse chase with the classic type. And in fact, we're in district court now, and the PTAB has instituted on three more or four more patents of theirs that attempted to change the claims in view of the invalidations in this proceeding. So the history is ample. And it's an attempt to mine the background of the invention. The patent, if the Jew patent said to it that Metzger had problems, and we've discovered that you can complete termination this way, and here's data about it, that would be one thing. But when they have a statement in column three, between line 25 and 30, unqualified that, oh, by the way, Metzger says you can incorporate allyl as a statement of the prior art without, but it may not work, but you may have to, you may have to, you know, increase concentration or does, none of that. So insofar as the complaint about Chen, you know, who's a Nobel Laureate, as being just prophetic, that's what, you know, I'm not sure what prophetic is necessarily a bad thing in the sense that Chen is, you know, saw well, that that's prophetic. Their patent is prophetic. They don't have data. They didn't, they didn't take, that's a great question, they didn't take the allyl ethers and test them to see whether they could run them to conclusion, you know, to, that maybe Metzger oversaw something and that they could do completed determination. They just assumed that it worked for the same reason that in the body of Metzger, it just says incorporation is achieved without saying, oh, and it's got a defect or it's a push this in his opening, which I guess I respect in that sense. But, you know, much of the appeal briefing was this attempt to sort of argue secondary considerations when there was no effort to define a long felt need to prove up that that need was satisfied, which wasn't proved, you know, which wouldn't have been able to be proved up. I mean, a lot of the appeal in the appellate brief is, you know, this argument about secondary consideration, long felt need, and that was never argued whatsoever. Counsel, this is Judge Rayner. Can you comment briefly on the supplemental authority that was submitted by Columbia and how we should consider that in view of your arguments? Uh, to be honest with Judge Rayner, I don't offhand know which, which, which, what you're referring to. Um, so maybe I overlooked that, but, um, okay. That's my time. Thank you very much. Thank you, Mr. Reines. Her name has three minutes of rebuttal time. Thank you, Your Honor. Um, with respect to the, um, comment by Illumina's counsel that the patents, the Columbia patents say nothing about the problems of METSCR. In column two, after discussing anger sequencing, people's trying, people trying to make SPS, cite METSCR. It cites METSCR. If we look at the 139 patents, column two, line 30, METSCR is cited as having been attempting SPS. And right after that, the very next sentence said that it was unsuccessful. And then in the, in the paragraph below that, there's the talk about Welsh, and that was a problem. And the problem was it was too big. And the appreciation of solving the problem is then the bottom of column two to the top of column three. METSCR taught the METSCR to work. Columbia thought that it wouldn't work. Columbia- I don't see that. I don't see that in the patent, them saying that, that METSCR says it doesn't work. I mean, I read that as reliance on METSCR. Excuse me. I'm, I'm, I'm focusing on column two, Your Honor, Judge O'Malley. Okay. Yeah. Right after, right after METSCR is cited, it says thus far, no complete success of using such a system in unambiguously, to unambiguously sequence DNA has been reported. The unambiguous sequencing, that's SPS. METSCR did not teach SPS. It did not have the, the sequencing. And everything that is now attributed to METSCR, because in, in column three, all the, all the client has done there, Columbia has done is say, you have to have it small. It can't be ketone, ester, or methoxy. It says you can use allele. METSCR doesn't say why he had a problem. He said afterwards, three times in 1998 and 2007 and 2011, he said that was a problem. Allele was a problem. But he doesn't say in 1994, why it's a problem. Dr. Ju and his colleagues, they appreciated why. And we know the Leo case says appreciation, recognition of a problem can be invention. They discovered the solution to the problem. Um, the, well, the patent says no complete success. That didn't, doesn't say that it doesn't work. So there's no complete. Give me your honor. I'm sorry. But your honor, it's a very detailed paper. And from the beginning to the end, it talks about terminators. We've cited the pages in our briefs from the beginning to the end, it talks about terminators. The allele is not a terminator. There were three terminators. The methoxy cap compounds one and eight for Sanger sequencing. The two nitrobenzyl compounds seven for SDS. Those are the only terminators. In the patent in suit, our, um, when we talk about terminators, we talk about them.  Um, we mentioned, if we look at, um, appendix three 28, three 29 and three 38, our compounds are terminators. We don't say Metzger is a terminator. We say Metzger teaches you how to do what Metzger said. That's all it says. If you want to make an allele cap, you can look at Metzger. You can also look at something else, but it doesn't say that it's a terminator. Metzger didn't appreciate, he didn't have any idea what was wrong with it. Our Columbia inventors did appreciate it had to be small. It had to be not a ketone, not a methoxy, not a Nestor. No one else did that. They broke the bottleneck. And by the way, your honor, also in response to your question earlier, we also have a patent with method claims. I know what I'm saying. All right. Thank you, counsel. We appreciate both arguments and the cases submitted.